JUDGE RAKOFF

07 CV 5991
NEW YORK COUNTY CLERK'S OFFICE
JUN
NOT COMPARED WITH COPY FILE
JUN 2 5 2007
U.S.D.C. S.D.N.Y.
CASHIERS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
RICHARD SIEGAL,

               Plaintiff,      :  Civil Action No.:_____

     -against-

WHITE LIGHT DESIGN, INC. and KEVIN D.  :  **NOTICE OF REMOVAL**
WHITE,

              Defendants.
----------------------------------------X

TO:  THE UNITED STATES DISTRICT COURT
     FOR THE SOUTHERN DISTRICT OF NEW YORK

    Defendants White Light Design, Inc. and Kevin D. White ("Defendants"), pursuant to 28 U.S.C. §1446, notifies this Honorable Court that the above-entitled cause has been removed from the Supreme Court of New York, New York County, to the United States District Court for the Southern District of New York, and in support of said notice states as follow:

    1.  On or about May 24, 2007, plaintiff, Richard Siegal (the "Plaintiff"), served upon Defendants a Summons and Complaint filed in the Supreme Court of the State of New York, New York County. Copies of the Summons and Complaint, attached hereto as Exhibit A, are the only pleadings that have been served upon Defendants.

    2.  Plaintiff resides in and is a citizen of New York State.

    3.  Defendant Kevin D. White resides in and is a citizen of Colorado.

4. Defendant White Light Design, Inc. is incorporated in and under the laws of Colorado.

5. The amount of controversy exceeds $75,000.00, exclusive of interest and costs.

6. The Court has original jurisdiction in this case pursuant to 28 U.S.C. §1332, and this action is removable pursuant to 28 U.S.C. §1441(a). Diversity jurisdiction existed at the time of the filing of the Plaintiff's Complaint and exists at the time of the filing of this Notice of Removal.

7. In compliance with 28 U.S.C. §1446(b), this Notice of Removal is filed with this Court within thirty (30) days after service of summons.

WHEREFORE, Defendants notify that this cause has been removed from the Supreme Court of New York, County of New York, to the United States District Court for the Southern District of New York, pursuant to the provisions of 28 U.S.C. §1332 and 28 U.S.C. §1446.

Respectfully submitted,

VAL MANDEL, P.C.
80 Wall Street, Suite 1115
New York, NY 10005
(212) 668-1700
Attorneys for Defendants

Dated: June 22, 2007

By: _____
Val Mandel (VM-1191)

Exhibit A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
---------------------------------------------------------------X

RICHARD SIEGAL

              Plaintiff,

           -against-

WHITE LIGHTING DESIGN, INC. and
KEVIN D. WHITE,

             Defendants.
---------------------------------------------------------------X

**SUMMONS**

Index No. 07/601737

Date filed: 5/23/07

TO THE ABOVE-NAMED DEFENDANTS:

YOU ARE HEREBY SUMMONED and required to serve upon plaintiff's attorney an answer to the complaint in this action within twenty days after the service of this summons, exclusive of the day of service, or within thirty days after service is complete if this summons is not personally delivered to you within the State of New York. In case of your failure to answer, judgment will be taken against you by default for the relief demanded in the complaint.

This action will be heard in the Supreme Court of the State of New York in and for the County of New York. The basis of the venue designated is CPLR 509, as the county designated by plaintiff.

Dated: New York, New York
       May 23, 2007

NIEHAUS LLP

_____
Paul R. Niehaus
NIEHAUS LLP
230 Park Avenue, 10th Floor
New York, New York 10169
(212) 551-1445 (tel)
(212) 624-0223 (fax)

*Attorneys for Plaintiff Richard Siegal*

SUPREME COURT OF NEW YORK
NEW YORK COUNTY
------------------------------------------------------------X
RICHARD SIEGAL,

                Plaintiff,

    -against-

WHITE LIGHTING DESIGN, INC. and
KEVIN D. WHITE,

                Defendant.
------------------------------------------------------------X

Index No. 07/601737

VERIFIED COMPLAINT

JURY TRIAL DEMANDED

    Plaintiff Richard Siegal ("Mr. Siegal" or "Plaintiff"), by and through his attorneys, Niehaus LLP, alleges as follows:

    1.    This action arises from the failure of Defendants to properly design and install an extremely expensive lighting system in Plaintiff's home. After more than four years of milking Mr. Siegal for over $1.9 million in fees and expenses, Defendants' lighting system still does not work, and Defendants are demanding another quarter-million dollars to continue their efforts to fix their own mistakes.

    2.    Plaintiff Richard Siegal is a citizen of the United States, and a New York resident. He maintains his place of business at 5 East 59th Street, New York, New York 10022.

    3.    Defendant Kevin D. White ("Mr. White") is a citizen of the United States, and a resident of the State of Colorado, with a principal place of business at 3775 Chase Street, Wheat Ridge, Colorado 80212. Mr. White is the principal and/or chief executive officer of Defendant White Lighting Design, Inc.

4. Defendant White Lighting Design, Inc. ("White Lighting") is a Colorado corporation, with a principal place of business at 3775 Chase Street, Wheat Ridge, Colorado 80212.

Planning and Agreement

5. In the summer of 2003 Plaintiff's wife, Mrs. Gail Siegal, approached Defendants about designing and supervising installation of lighting for a home that the Siegals were building in the Bahamas. Defendants had previously completed small lighting design and installation projects for the Siegals at their Vail, Colorado, and Long Island homes. In both cases, Defendants had spent considerable time designing the lighting projects, and then spent time on site, directly overseeing and supervising the projects.

6. Mr. Siegal hired Defendants to design and supervise installation of the lighting system for the Bahamas house for three primary reasons. First, Mr. Siegal and his wife wanted Defendants to design a lighting system that was aesthetically pleasing. Second, Mr. Siegal wanted all aspects of the lighting overseen and directed by a professional, from design of the system to supervision of the installation.

7. Third, Mr. Siegal wanted to ensure that the home's lighting would be appropriate for Mrs. Siegal. Mrs. Siegal suffers from the effects of low tension glaucoma, which severely restricts her field of vision. Mrs. Siegal finds it difficult to see, and very difficult to read under normal lighting – her condition requires significant "overlighting" and the elimination of shadows or dim spots in a room. Defendants were therefore hired to design and oversee installation of a lighting system that would accommodate Mrs. Siegal's vision disability.

8. Sensing an opportunity for a huge fee, Mr. White began pushing the Siegals to install a highly complicated, very expensive Lutron lighting system for the Bahamas house. Mr.

White promised that the Lutron system would consist of a house- and grounds-wide lighting and electrical control system, centrally controlled by computer.

9. Mrs. Siegal expressed doubts that such a complicated system was necessary, stating that she preferred a simpler lighting system that would meet her special needs. But Mr. White continued to push the complex, computer-controlled Lutron system, claiming that it would provide the best lighting for Mrs. Siegal's condition.

10. The design, installation, and programming of such a system was far more ambitious than any work Mr. White had previously performed for Plaintiff, but Mr. White assured Mrs. Siegal that he was up to the challenge.

11. In or about July 2004, the parties therefore agreed that Mr. White and White Lighting would design and oversee the installation of all lighting the Siegal's Bahamas home. As part of the process, Defendants would also design and program the computer-controlled Lutron system. This agreement was confirmed in correspondence between the parties.

12. During discussions over the course of 2004-05, Mrs. Siegal continually reaffirmed that the Lutron system was to be kept simple, with the computer responsible for such basic functions as turning on outdoor lighting as specified times, and turning on lights while the Siegals were away from their home. Mrs. Siegal and Mr. White also repeatedly discussed Mrs. Siegal's deteriorating eyesight, which by 2006 had reduced her vision to approximately 10% in one eye, and 60% in the other.

13. Construction on the Bahamas house commenced in early 2004. During the early phases of construction, Mr. White and White Lighting employees attended meetings in the Bahamas to discuss construction-related issues. Mr. Siegal paid for these trips, for luxury hotel accommodations for Mr. White and his staff, and for Mr. White's time during these trips.