UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
RICHARD SIEGAL,                          :
                                         :
                        Plaintiff,       :    07 CV. 5991 (JSR)
                                         :
-against-                                :
                                         :
WHITE LIGHT DESIGN, INC. and KEVIN D.    :
WHITE,                                   :
                                         :
                        Defendants.      :
                                         :
----------------------------------------X


**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS FOR
LACK OF PERSONAL JURISDICTION OR, IN THE ALTERNATIVE, TO TRANSFER
THIS ACTION**


Eric Wertheim, Esq. (EW-3047)
Val Mandel, P.C.
80 Wall Street, Suite 1115
New York, NY 10005
*Attorneys for Defendants*

## TABLE OF CONTENTS

Page

Introduction . . . . . . . . . . . . . . . . . . . . . . . . 1

The Complaint . . . . . . . . . . . . . . . . . . . . . . . 3

Additional Facts . . . . . . . . . . . . . . . . . . . . . 4

Argument . . . . . . . . . . . . . . . . . . . . . . . . 6

   I.   The Court Lacks Personal Jurisdiction Over the
       Defendants . . . . . . . . . . . . . . . . . . . . 6

     A. Defendants are not "Present" in New York . . . . . . . . 6

     B. There is no Specific Jurisdiction in New York . . . . . 7

        1. Defendants did not Transact Business in
           New York . . . . . . . . . . . . . . . . . . . . 8

        2. There is no Substantial Nexus Between Defendants'
           New York Visits and the Claims in the Complaint . . 11

     C.  There is no "Tortious Act" Jurisdiction . . . . . . . 11

  II.   This Action Should be Transferred to the District
      of Colorado . . . . . . . . . . . . . . . . . . . . . . 12

     A. All of the Convenience Factors Support Transfer . . . . 13

     B. Colorado is the Locus of Operative Facts . . . . . . . 13

     C. The Availability  of Process Supports Transfer . . . . 13

     D. The Relative Means of the Parties Support  Transfer . . .14

     E. Plaintiff's Choice of Forum is Entitled to Little Weight.14

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . .16

Table of Authorities

Cases

AmSouth Bank v. Dale, 386 F.3d 763, 788 (6th Cir. 2004) . .    15

Anderson v. Indiana Black Expo, Inc., 81 F. Supp. 2d 494, 501
(S.D.N.Y. 2000) . . . . . . . . . . . . . . . . . . . . . .    7, 9, 11

Bozell Group, Inc., V Carpet Co-Op Of America, Association, Inc.,
2000 U.S. Dist. LEXIS 15088 (S.D.N.Y. October 13, 2000) . .    10, 11

Clark-Fitzpatrick, Inc. v. Long Island R.R. Co., 70 N.Y.2d 382
(1987). . . . . . . . . . . . . . . . . . . . . . . . . . .    12

D.H. Blair & Co. V. Gottdiener, 462 F.3d 95, 106-07 (2d Cir.
2006) . . . . . . . . . . . . . . . . . . . . . . . . . . .    13

Finesurgic, Inc. v. Davis, 538 N.Y.S.2d 568 (2d Dep't 1989).    9

Landoil Resources Corp. v. Alexander & Alexander Servs., 918
F.2d 1039, 1043 (2d Cir. 1990) . . . . . . . . . . . . . .    6-7

Mareno v. Rowe, 910 F.2d 1043, 1046 (2d Cir. 1990) . . . . .    12

MCANY, Inc. v. Carpionato Corp., 1989 U.S. Dist. LEXIS 11662,
No. 89 Civ. 4528 (S.D.N.Y. Oct. 3, 1989) . . . . . . . . .    10

McGowan v. Smith, 52 N.Y.2d 268(1981) . . . . . . . . . . .    11

Premier Lending Servs., Inc. v. J.L.J. Assocs., 924 F. Supp. 13,
17 (S.D.N.Y. 1996) . . . . . . . . . . . . . . . . . . . .    10

Presidential Realty Corporation v. Michael Square West, Ltd.,
44 N.Y.2d 672, 673 (1978) . . . . . . . . . . . . . . . . .    9

Schnall v. Clearfield Cheese Co., 257 N.Y.S.2d 491 (1st Dep't
1965) . . . . . . . . . . . . . . . . . . . . . . . . . . .    9

Smit v. Isiklar Holding A.S., 354 F. Supp. 2d 260, 263
(S.D.N.Y. 2005) . . . . . . . . . . . . . . . . . . . . . .    6, 9

Spencer Trask Ventures, Inc. v. Archos S.A., 2002 U.S. Dist.
LEXIS 4396 (S.D.N.Y. March 18, 2002). . . . . . . . . . . .    8

<u>United Computer Capital Corp. v. Secure Prods.</u>, L.P., 218 F.
Supp. 2d 273, 277-278 (N.D.N.Y 2002). . . . . . . . . . . . . 8

### Statutes

28 U.S.C. § 1404(a) . . . . . . . . . . . . . . . . . . . . 13

C.P.L.R. § 301 . . . . . . . . . . . . . . . . . . . . . . 6

C.P.L.R. § 302(a)(1) . . . . . . . . . . . . . . . . . . . 7

C.P.L.R. § 302(a)(3)(ii). . . . . . . . . . . . . . . . . . 11

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
RICHARD SIEGAL,                         :
                                        :
                         Plaintiff,     :
                                        : 07 CV. 5991 (JSR)
                                        :
              -against-                 :
                       \                :
                                        :
WHITE LIGHTING DESIGN, INC.             :
and KEVIN D. WHITE,                     :
                                        :
                                        :
                         Defendants.    :
                                        :
----------------------------------------X

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS
FOR LACK OF PERSONAL JURISDICTION OR, IN THE ALTERNATIVE, TO
TRANSFER THIS ACTION**

Defendants respectfully submit this Memorandum of Law in
Support of their Motion to Dismiss the Complaint for Lack of
Personal Jurisdiction or, in the Alternative, to Transfer this
Action to the District of Colorado.

### INTRODUCTION

These defendants and this lawsuit belong in Colorado, not
New York. Accepting the allegations of the Complaint as true
and drawing all inferences in its favor, the Complaint fails to
offer a single fact that would support personal jurisdiction for
any claim under any of the jurisdictional provisions of the
Civil Practice Law and Rules.

Plaintiff, an extremely wealthy individual with existing homes in (at least) New York and Colorado, approached defendant White Lighting Design, Inc. ("WLD"), a small Denver area company, about providing designs for plaintiff's planned home in the Bahamas. WLD is not "doing business" anywhere outside of its office in Colorado.

The Complaint details a litany of alleged failures by defendants in the performance of their services, and describes a number of trips by defendants in connection with those services – all to the Bahamas. The Complaint identifies no activity whatsoever in, or relating to, New York.

Even if plaintiff could make a colorable showing of personal jurisdiction at this stage, the relevant factors overwhelmingly favor transfer of this action to Colorado. All of the voluminous files and witnesses to WLD's allegedly defective design work are in Colorado, plaintiff has a home in Colorado where the parties' agreement was initially formed, there is a gross disparity of resources in plaintiff's favor, and this lawsuit represents plaintiff's improper "race to the courthouse" to pre-empt the filing of a collection claim by WLD in Colorado.

## THE COMPLAINT

The allegations of the Complaint are as follows.  Plaintiff resides in New York.  Defendants reside in Colorado.  In the summer of 2003, plaintiff and his wife "approached defendants" about designing and supervising the installation of lighting for a new home they were building in the Bahamas.  Plaintiff had retained Defendants for earlier, successful projects on his Long Island and Vail Colorado homes. Complaint ¶¶ 2-5.

Defendants agreed to do the work but convinced the Siegals to include a computer-controlled lighting system that was more complex and expensive then the work the Siegals originally envisioned.  The agreement was "confirmed in correspondence" between the parties. Complaint ¶¶ 8, 11.

The Complaint goes on to describe a litany of alleged flaws in defendants' design work.  The Complaint also alleges that defendants failed to supervise the onsite contractors who installed the lighting system, and failed to remedy the problems caused by their flawed designs.  In connection with these allegations, the Complaint describes meetings with, or activities by, defendants in the Bahamas in five different paragraphs. Complaint ¶¶ 13, 14, 25, 26, 27.  Apart from identifying plaintiff's residence, the Complaint never mentions New York.

3

Defendants' design work was finished in January 2006. After the many design problems became apparent, defendants tried to fix them and, in December of 2006, declared that the job was done.  In fact, the system remained, and remains, dysfunctional. Complaint ¶¶ 23-28.

On or about May 11, 2007, WLD sent plaintiff a demand letter seeking payment of approximately $250,000 in fees. Plaintiff filed this lawsuit twelve days later. Complaint ¶¶ 79, Page 1.

**ADDITIONAL FACTS**

WLD is a small lighting design and consultation firm that specializes in high end residential projects.[1]  WLD has been in business for over 20 years. WLD's reputation is such that all of its work comes from referrals.  WLD employs four people besides defendant Kevin White.  WLD has no active, ongoing business presence of any kind outside of its office in Colorado.  WLD performs design work, not electrical engineering or electrical contracting.  As such, regardless of the project site, the vast majority of WLD's work is performed in its Colorado office. White Declaration ¶¶ 2, 3.

The plaintiff, Richard Siegal, is an extremely wealthy individual.  He owns and runs a prominent oil and gas

---

[1] These facts are taken from the accompanying Declaration of Defendant Kevin White.

4

exploration company which has interests in over 1400 oil or gas wells throughout the world.  In comparison, WLD's gross annual income over the last four years has averaged less than one million dollars.  White Declaration ¶ 4.

WLD has performed services for Mr. Siegal, and his wife, Gail, before.  WLD provided lighting design services for the Siegal's homes in Long Island New York and Vail, Colorado.  The Siegals asked WLD to work on the Bahamas project at a meeting of the parties in the Siegal's Vail Colorado home. White Declaration ¶ 6.

More than 99% of the time WLD spent on the design work for the Bahamas project was spent in WLD's offices in Colorado.  WLD personnel visited the job site at least 70 times, usually for three to seven days at a time.  Occasionally, for their convenience, WLD personnel met the Siegals in Vail or at their Long Island home.  None of WLD's New York visits involved contract negotiation or execution. White Declaration ¶ 7.

All of the records, details and drawings for the Bahamas project are in WLD's files in Colorado.  There are in excess of one thousand pages of hard copy files and electronic files for the Bahamas project.  All WLD employees who worked on the project reside in Colorado. White Declaration ¶ 8.

**ARGUMENT**

### I.   The Court Lacks Personal Jurisdiction Over the Defendants

Plaintiff must prove the Court's jurisdiction over the parties.  When a motion challenging personal jurisdiction is presented before discovery has been conducted on that issue, the plaintiff may defeat the motion by pleading a *prima facie* showing of personal jurisdiction.  The pleadings and affidavits must be construed in the light most favorable to plaintiff; a court should not, however, draw "argumentative inferences" in favor of a plaintiff who has failed to allege even bare facts to support the exercise of personal jurisdiction.  Smit v. Isiklar Holding A.S., 354 F. Supp. 2d 260, 263 (S.D.N.Y. 2005).

The Complaint does not identify the alleged basis for personal jurisdiction.  Therefore, we consider below alternative bases for the exercise of personal jurisdiction under the Civil Practice Law and Rules, which govern the question in this diversity action.

### A.   Defendants are not "Present" in New York

CPLR § 301 confers jurisdiction over a non-domiciliary defendant on any cause of action where the defendant is engaged in such a continuous and systematic course of "doing business" in New York as to warrant a finding that it is present in the state. Landoil Resources Corp. v. Alexander & Alexander Servs.,

918 F.2d 1039, 1043 (2d Cir. 1990). Factors considered under Section 301 include: 1) whether the corporation has an office in New York; 2) whether the corporation has solicited business in New York; 3) whether the corporation has bank accounts or property in New York; and 4) whether the corporation has employees in New York. Id.

Plaintiff does not and cannot allege that defendants are present in New York within the meaning of Section 301. Defendants operate a small business in the Denver Colorado area. They have no active, ongoing presence anywhere but in their office.  See White Declaration ¶¶ 2-3.

    B.   There is no Specific Jurisdiction in New York

A New York court may exercise personal jurisdiction over a non-domiciliary defendant who: (1) transacted business in New York (2) if the cause of action arises out of the business transacted. CPLR § 302(a)(1).  Each asserted cause of action must arise out of the transaction of business in New York. See Anderson v. Indiana Black Expo, Inc., 81 F. Supp. 2d 494, 501 (S.D.N.Y. 2000).

In considering long-arm jurisdiction under Section 302, the New York Court of Appeals has warned "'that defendants, as a rule, should be subject to suit where they are normally found, that is, at their pre-eminent headquarters, or where they conduct substantial general business activities. Only in a rare

case should they be compelled to answer suit in a jurisdiction with which they have the barest of contact.'" Spencer Trask Ventures, Inc. v. Archos S.A., 2002 U.S. Dist. LEXIS 4396 (S.D.N.Y. March 18, 2002) (quoting Mckee Electric Co. v. Rauland-Borg Corp., 20 N.Y.2d 377, 383(1967)).

### 1. Defendants did not Transact Business in New York

A defendant "transacts business" in New York when it has "purposely availed" itself of the opportunity to conduct business here, and thereby obtains the benefits and protections of New York law. The existence of purposeful activity should be considered in the totality of the circumstances, and jurisdiction should not be asserted against a defendant based upon "random" or "fortuitous" contacts.  It is the nature and quality, not the number of contacts that determine whether activity is purposeful.  As a rule, the "minimum contacts" must provide a defendant with notice that it might be subjected to suit in courts of the forum state. See United Computer Capital Corp. v. Secure Prods., L.P., 218 F. Supp. 2d 273, 277-78 (N.D.N.Y 2002).

Factors considered in determining whether an out-of-state defendant transacts business in New York, include: (1) whether the defendant has an ongoing contractual relationship with a New York corporation; (2) whether the contract was negotiated or

8

executed in New York; (3) whether the defendant visited New York

for the purpose of meeting with the parties to the agreement";

and (4) the choice of law clause in the agreement. Smit, 354 F.

Supp. 2d at 265.

Factors 1, 2, and 4 can be addressed summarily.  There is

no evidence to support them in this case.  Relying solely on the

allegations of the Complaint, and accepting them as true for

purposes of this motion, factor 3 falls as well.  Plaintiff

repeatedly emphasizes activities of the defendants in the

Bahamas but mentions nothing about New York.

Defendants did, in fact, make occasional trips to New York

for the Siegal's convenience but these tangential visits to New

York cannot support personal jurisdiction.  Merely setting foot

across the New York border does not trigger personal

jurisdiction.  Presidential Realty Corporation v. Michael Square

West, Ltd., 44 N.Y.2d 672, 673 (1978).  Our courts have

consistently required a defendant's New York visits to be

significant, though not necessarily frequent, to support

jurisdiction. In contract cases, significant invariably means

contract negotiations, execution or performance.  See

Finesurgic, Inc. v. Davis, 538 N.Y.S.2d 568 (2d Dep't 1989);

Schnall v. Clearfield Cheese Co., 257 N.Y.S.2d 491 (1st Dep't

1965); but see Anderson, 81 F. Supp. 2d at 501-02 (contract

execution in New York may not, alone, confer jurisdiction).

When a defendant's New York visits are tangential or
marginal to contract formation or performance, they will not
support jurisdiction.  See, e.g., Bozell Group, Inc., V Carpet
Co-Op Of America Association, Inc., 2000 U.S. Dist. LEXIS 15088
(S.D.N.Y. October 13, 2000)(no jurisdiction where two business
meetings in New York did not lead to contract); Premier Lending
Servs., Inc. v. J.L.J. Assocs., 924 F. Supp. 13, 17 (S.D.N.Y.
1996), (only New York meeting between the parties was "a brief
progress report" that took place after the execution of the
agreement and had "only slight relevance for jurisdictional
purposes"); MCANY, Inc. v. Carpionato Corp., 1989 U.S. Dist.
LEXIS 11662, No. 89 Civ. 4528 (S.D.N.Y. Oct. 3, 1989) (two
meetings in New York appear to have involved mere discussions,
rather than substantial negotiations involving the contract at
issue, and were insufficient for prima facie showing of
jurisdiction).

The Court should take plaintiff at his word. Nothing
substantial took place in New York.  Plaintiff admits that he
approached defendants about this project - in Colorado, as Mr.
White explains - and that the terms of the retention were
confirmed by correspondence.  The Complaint is quite explicit
and detailed in emphasizing repeatedly that this case is about
(a) defendants' allegedly flawed design work and (b)
defendant's failure to supervise the installation work in the

10

Bahamas.   The design work took place in Colorado and represented "99.9" of defendants' activities on this project.

2. There is no Substantial Nexus Between Defendants' New York Visits and the Claims in the Complaint

Plaintiff must establish not only that the defendants transacted business in New York but also a "substantial nexus" between the transaction of business and the cause of action sued upon.  Anderson, 81 F. Supp. 2d at 501; See Bozell Group, Inc., V Carpet Co-Op Of America Association, Inc., 2000 U.S. Dist. LEXIS 15088 (S.D.N.Y. October 13, 2000)(noting attenuated chain of events from New York meetings to alleged wrong); McGowan v. Smith, 52 N.Y.2d 268 (1981) (requiring an "articulable nexus" between claims asserted and transaction of business in New York).

Plaintiff should not be heard to contend that defendants' New York visits were a substantial, proximate cause of his claims when his otherwise detailed Complaint makes no mention of them.

C. There is no "Tortious Act" Jurisdiction

Having inserted some negligence claims into the Complaint, plaintiff may argue that jurisdiction exists under N.Y. CPLR § 302 (a)(3)(ii), which provides for jurisdiction where a tortiuous act is committed outside New York but "causes injury to person or property within the state," and the tortfeasor

11

"expects or should reasonably expect to have consequences in the state."

Plaintiff has two intractable problems here.  First, negligence theories do not belong in the case.  Defendants' duties to plaintiff arise from a contract. It is well established that a simple breach of contract is not a tort unless a legal duty independent of the contract itself has been violated.  A negligence claim may be brought provided that the plaintiff alleges that "a legal duty independent of the contract itself has been violated." Clark-Fitzpatrick, Inc. v. Long Island R.R. Co., 70 N.Y.2d 382 (1987).

Second, there has been no injury in the state within the meaning of N.Y. CPLR § 302(a)(3)(ii). "The situs of the injury is the location of the original event which caused the injury, not the location where the resultant damages are subsequently felt by the plaintiff." Mareno v. Rowe, 910 F.2nd 1043, 1046 (2d Cir. 1990). Plaintiff may have been hurt in the pocket book by defendants' alleged misdeeds but the situs of the injury is the Bahamas, not New York.

**II.  This Action Should be Transferred to the District of Colorado**

For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have

12

been brought." 28 U.S.C. § 1404(a). In determining whether a transfer is appropriate, district court considers factors including: (1) the plaintiff's choice of forum; (2) the convenience of witnesses; (3) the location of relevant documents and relative ease of access to sources of proof; (4) the convenience of the parties; (5) the locus of operative facts; (6) the availability of process to compel the attendance of unwilling witnesses; and (7) the relative means of the parties. D.H. Blair & Co. V. Gottdiener, 462 F.3d 95, 106-07 (2d Cir. 2006) (citation omitted).

### A.  All of the Convenience Factors Support Transfer

The key matters to be explored in this case are the design work and alleged supervisory work performed by defendants.  The witnesses to these matters are Mr. White and the staff of WLD, all residing in Colorado.  The vast majority of defendants' extensive work took place in Colorado, where files in excess of 1000 pages are located.

### B. Colorado is the Locus of Operative Facts

For the same reasons described above, Colorado is the locus of operative facts.

### C. The Availability of Process Supports Transfer

At this stage, the availability of process is not an issue, but if any of the WLD employees who worked on this project

13

resign or are terminated, process out of the District of
Colorado will be required to obtain their testimony.

        D. The Relative Means of the Parties Support Transfer

      The Siegal's are enormously wealthy.  Their wealth can be
gleaned from the Complaint alone.  The Siegal's have spent close
to two million dollars on just the lighting for their new
Bahamas house (which is, at least, their third home).
Defendants' means are far more modest.  Although WLD has been in
business for 20 years and has an excellent reputation, its
highest annual gross income is less than one million dollars.

        E. Plaintiff's Choice of Forum is Entitled to Little Weight

      While the plaintiff's choice of forum ordinarily is
entitled to significant weight, there are two reasons to treat
that choice very lightly in this case.  First, plaintiff has a
home in the transferee District.  It was at his Colorado home
that plaintiff first retained these Colorado defendants to
perform the design work at issue here.

      Second, plaintiff has engaged in improper forum shopping by
filing in this District.  Defendants' allegedly defective design
work was finished in January 2006.  After the design problems
became apparent, defendants tried to fix them but despite their
assurances in December of 2006, that all was well, the defects
remained.  Despite the alleged chronic problems and defendants'
continued failures, plaintiff did not see fit to sue.  It was

only after defendants sent plaintiff a demand letter on May 11,
2007 that plaintiff decided to sue and he did so less than two
weeks after receiving the letter.  That is why the Complaint
includes a request for a declaratory judgment that plaintiff
owes no money to defendants.

Although it is tucked at the end of the Complaint, the
chronology of events shows that the declaratory judgment claim
was the impetus behind this lawsuit.  Plaintiff wanted to pre-
empt the filing of a collection action by defendants in
Colorado.  As explained in AmSouth Bank v. Dale, 386 F.3d 763
(6th Cir. 2004) and cases cited therein, that is improper forum
shopping:

> Courts take a dim view of declaratory plaintiffs
> who file their suits mere days or weeks before the
> coercive suits filed by a "natural plaintiff" and who
> seem to have done so for the purpose of acquiring a
> favorable forum. Allowing declaratory actions in these
> situations can deter settlement negotiations and
> encourage races to the courthouse, as potential
> plaintiffs must file before approaching defendants for
> settlement negotiations, under pain of a declaratory
> suit. This also dovetails with the previous factor:
> where a putative defendant files a declaratory action
> whose only purpose is to defeat liability in a
> subsequent coercive suit, no real value is served by the
> declaratory judgment except to guarantee to the
> declaratory plaintiff her choice of forum -- a guarantee
> that cannot be given consonant with the policy
> underlying the Declaratory Judgment Act.

Id. at 788.

**CONCLUSUION**

For the reasons set forth above, this action should be dismissed for lack of personal jurisdiction or, in the alternative, transferred to the District of Colorado.

VAL MANDEL, P.C.
80 Wall Street, Suite 1115
New York, NY 10005
*Attorneys for Defendants*

By: _____
    Eric Wertheim (EW-3047)

16