Paul R. Niehaus (PN-3994)
NIEHAUS LLP
230 Park Avenue, 10th Floor
New York, NY 10169
(212) 551-1445

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                    :
RICHARD SIEGAL,                           :     No. 07-cv-5991 (JSR)
                                                    :     Electronically Filed Case
                    Plaintiff,                :
                                                     :     **MEMORANDUM OF LAW**
              -against-                  :     **IN OPPOSITION TO**
                                                    :     **DEFENDANTS' MOTION TO**
WHITE LIGHTING DESIGN, INC. and   :     **DISMISS OR TRANSFER**
KEVIN D. WHITE,                         :
                                                     :
                    Defendants.    :
------------------------------------------------------------X

Dated: New York, New York
        July 30, 2007

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...................................................................................................1

STATEMENT OF FACTS ...........................................................................................................2

ARGUMENT .................................................................................................................................4

I. THIS COURT HAS PERSONAL JURISDICTION OVER DEFENDANTS ............................4

    A.    This Court Has Specific Jurisdiction Under CPLR § 302(a)(1) ...................................4

        1.    Jurisdiction May Be Founded Solely on Meetings in New York..........................................................................5

        2.    Jurisdiction May Be Founded Solely on Communications with New York .............................................................7

        3.    Revenues Derived From New York are a Significant Factor ...........................8

        4.    The Totality of the Circumstances Favor Jurisdiction.....................................9

        5.    Plaintiff's Causes of Action Arise out of The Business Transacted in New York .......................................................................10

II. DEFENDANTS HAVE NOT SHOWN THAT THE MATTER SHOULD BE TRANSFERRED TO COLORADO....................................................................10

    A.    Plaintiff's Proper Choice of Forum is Entitled to Significant Weight...................11

    B.    Document Location Does Not Weigh in Favor of Transfer .................................12

    C.    Witness and Party Inconvenience Does Not Weigh in Favor of Transfer.............13

    D.    The Locus of Operative Facts Does Not Weigh in Favor of Transfer...................14

    E.    Availability of Process Does Not Weigh in Favor of Transfer.............................15

    F.    The Relative Means of the Parties Do Not Weigh in Favor of Transfer ...............15

CONCLUSION............................................................................................................................16

# TABLE OF AUTHORITIES

*Aerotel, Ltd. v. Sprint Corp.*, 100 F. Supp. 2d 189, 197 (S.D.N.Y.)..............................................11

*Allen v. Canadian General Electric Co. Ltd.*,
    65 A.D.2d 39, 410 N.Y.S.2d 707 (3d Dep't 1978)................................................................8

*AmSouth Bank v. Dale*, 386 F.3d 763 (6th Cir. 2004) ......................................................................12

*Boehner v. Heise*, 410 F. Supp.2d 228 (S.D.N.Y. 2006) ................................................................15

*Camel Investments Ltd. v. Transocean Capital*, 195 A.D.2d 533,
    600 N.Y.S.2d 471 (2d Dep't 1993).......................................................................................7

*Catauro v. Goldome Bank for Savings*,
    189 A.D.2d 747, 592 N.Y.S.2d 422 (2d Dep't 1993)............................................................7

*Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549 (S.D.N.Y. 2000)...............................11, 15

*Firegreen Ltd. v. Claxton*, 160 A.D.2d 409, 553 N.Y.S.2d 765 (1st Dep't 1990) ..........................6

*George Reiner and Co., Inc. v. Schwartz*, 41 N.Y.2d 648, 394 N.Y.S.2d 844 (1977) ....................6

*Ins. Co. of State of Pennsylvania v. CIGNA Property and Cas. Ins. Co.*,
    162 A.D.2d 390, 557 N.Y.S.2d 43 (1st Dep't 1990). ............................................................5

*Kernan v. Kurz-Hastings, Inc.*, 175 F.3d 236 (2d Cir. 1999) ..........................................................5

*Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 527 N.Y.S.2d 195 (1988) .................................5

*Matera v. Native Eyewear, Inc.* 355 F. Supp. 2d 680 (E.D.N.Y. 2005) ........................................10

*Nichols v. Surgitool, Inc.*, 419 F. Supp. 58 (W.D.N.Y. 1976) ..........................................................8

*Orb Factory, Ltd. v. Design Science Toys, Ltd.*, 6 F. Supp. 2d 203 (S.D.N.Y. 1998).............11, 13

*Parke-Bernet Galleries, Inc. v. Franklyn*, 26 N.Y.2d 13, 308 N.Y.S.2d 337 (1970) ......................5

*Reynolds v. Aircraft Leasing, Inc.*, 2002 WL 31748824 (N.Y. Sup. Queens Co. 2002) .................8

*Rung v. U.S.F & G.*, 139 A.D.2d 914, 527 N.Y.S.2d 903 (4th Dep't 1988) ....................................9

*SAS Group, Inc. v. Worldwide Inventions, Inc.*, 245 F. Supp. 2d 543 (S.D.N.Y. 2003) .............5, 6

*Schnabel v. Ramsey Quantitative Systems, Inc.*, 322 F. Supp. 2d 505 (S.D.N.Y. 2004).........10, 13

*Snyder v. Madera Broadcasting, Inc.* 872 F. Supp. 1191 (E.D.N.Y. 1995) ....................................8

Plaintiff Richard Siegal, by and through his attorneys, Niehaus LLP, submits the following Memorandum of Law in Opposition to Defendants' Motion to Dismiss or Transfer.

## PRELIMINARY STATEMENT

At bottom, Defendants' motion is founded on the notion that Mr. Siegal did not affirmatively set forth in the Complaint all of the reasons that jurisdiction in New York is appropriate. Of course, such detailed jurisdictional allegations are unnecessary in a complaint, particularly where the complaint was originally filed in state court, and then removed by Defendants. In response to Defendants' motion, Mr. Siegal now offers sufficient facts sufficient to meet his burden of making a *prima facie* showing of jurisdiction.

When taken together, Defendants' contacts with New York with respect to the matters at issue are more than sufficient to render Defendants subject to this Court's jurisdiction. Defendants held meetings in New York to discuss the services to be provided by Defendants, Defendants communicated regularly with New York by phone, fax, mail, and e-mail regarding the matters at issue, Defendants sent bills to and received payment from New York, and Defendants – by their own reckoning – derived at least 25% of their annual revenues from New York over the past three years. Any one of these facts would suffice for specific jurisdiction over Defendants, and together they are overwhelming.

Perhaps recognizing that their motion for dismissal is ill-founded, Defendants move in the alternative for transfer of this matter to the District of Colorado. But Defendants have wholly failed to present the detailed information necessary to meet their burden of showing that the matter should be transferred, and many of the same facts supporting jurisdiction also weigh in favor of retaining this matter in the Southern District of New York.

1

**STATEMENT OF FACTS**

Seeking to avoid this Court's jurisdiction, Defendants' papers gloss over their frequent, consistent, and substantive contact with New York during the course of designing and installing the lighting system for Plaintiff's Bahamas house.

Most obviously, Mr. White and/or White Lighting employee Elizabeth Gilmore traveled to New York least half a dozen times in connection with Defendants' work on the lighting for the Bahamas house. During each of these trips, Mrs. Siegal would meet with Mr. White and his employee for hours at a time to discuss the lighting for the Bahamas house. Contrary to Defendants' insinuation, serious work was accomplished during these meetings in New York. The parties discussed and reviewed the general design of the lighting system, lighting for specific rooms, specific types of lighting, specific fixtures, Mrs. Siegal's special lighting needs given her degenerative ocular condition, time frames for the completion of work, and progress that had been made. Costs were also discussed with respect to certain hand-blown glass fixtures to be installed in the second floor hallway. (Siegal Aff. ¶¶ 2-3.)[1]

These New York meetings were integral to the performance of Defendants' duties as Plaintiff's lighting designer, as significant decisions were discussed and made at the meetings. A typical meeting in New York would consist of Mr. White or his employees showing Mrs. Siegal a variety of design and fixture sketches, plans and photos, discussing the options and placement of fixtures, and Mrs. Siegal either selecting a particular design or fixture, or requesting that Mr. White suggest additional alternatives. While other decisions were made on the basis of fax and phone correspondence, it would have been very difficult for the project to proceed without the in-person New York meetings. (Siegal Aff. ¶ 4.)

---

[1] References to Siegal Aff ¶ __ at to the Affidavit of Gail Siegal, sworn to on July 27, 2007.

2

Defendants also had extensive fax and phone contact with New York relating to the matters at issue. Throughout the four-year course of the project, Mrs. Siegal spoke with Mr. White and his employees by phone, from New York, dozens of times. The calls ranged from 30 minutes in duration to 90 minutes or more. During the early phases of the project, Mrs. Siegal spoke to Mr. White and his employees (usually Elizabeth Gilmore) on a weekly or semi-weekly basis. Subsequently, the frequency of the calls would vary depending on activity at the work site. The subjects of the phone conversations were very similar to the topics discussed during the New York meetings, and generally covered the gamut of design choices and decisions. (Siegal Aff. ¶¶ 5-7.)

On a regular basis, Defendants also sent dozens of faxes to New York relating to the lighting system. Again, these faxes generally covered a wide range of design and fixture options, including sketches, photos, and plans for the lighting system. Frequently, phone conversations and faxes were used in tandem to make design and fixture decisions. Mr. White or his employees would fax Mrs. Siegal a variety of options, and during a subsequent phone call the parties would discuss them and possibly make a decision. Based on the phone conversation, Mr. White or his employees would prepare the next fax, and the process would repeat. (Siegal Aff. ¶ 8.)

On a few occasions, Defendants also sent Federal Express packages to New York in connection with this matter. These packages generally contained higher-quality versions of plans, sketches, and photos than could be transmitted by fax. (Siegal Aff. ¶ 9.) While it is difficult for Plaintiff to estimate the volume of faxes and hard copy correspondence received in New York from Mr. White or his employees, it certainly amounted to hundreds of pages, at least some of which has been retained. (Siegal Aff. ¶ 10.)

All payment matters relating to the Bahamas house project were dealt with out of New York. Every invoice sent by Defendants regarding the Bahamas house was sent to New York, and every payment made to Defendants regarding the Bahamas house was sent from New York. (Siegal Aff. ¶¶ 12-13.) Based on Defendants' statement that White Lighting's annual gross income has averaged less than a million dollars over the past four years, during 2004-06, revenues derived from this transaction – from New York – represented at least 25% of Defendants' revenues during those years. (White Decl. ¶ 4; Niehaus Aff. ¶ 5.)[2]

## ARGUMENT

### I. THIS COURT HAS PERSONAL JURISDICTION OVER DEFENDANTS

As noted above, Defendants' argument for lack of jurisdiction often rests on the notion that the Complaint fails to identify specific actions taken in New York. At the same time, Defendants' motion papers acknowledge – as they must – that Plaintiff may defeat the motion by presenting "pleadings and affidavits" that plead a *prima facie* showing of personal jurisdiction. (Def. Mem. p. 6.) The affidavits submitted herewith more than meet that burden.

#### A. This Court Has Specific Jurisdiction Pursuant to CPLR § 302(a)(1)

CPLR § 302(a)(1) provides that a New York court may exercise personal jurisdiction over a non-domiciliary defendant who: (1) transacted business in New York (2) if the cause of

---

[2] In arriving at the 25% number, Plaintiff has assumed that in referring to "gross annual income," Mr. White is referring to income received for professional services and consultation fees, and not to payments received as reimbursements for expenses or hardware. On that basis, the percentage of Defendants' revenue attributable to New York sources is at least 14% for 2004, 23% for 2005, and 37% for 2006. Of course, if the million dollars in "gross annual income" *includes* reimbursements for expenses and hardware, the percentage of Defendants' revenues derived from New York skyrockets to 18% for 2004, 59% in 2005, and a whopping 91% in 2006. (Niehaus Aff. ¶¶ 5-6.)

4

action arises out of the business transacted.[3] CPLR § 302(a)(1) is a "single act statute", and proof of one transaction in New York is sufficient to invoke jurisdiction, even if the defendant never physically enters New York, "particularly in this day of instant long-range communications". *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 467, 527 N.Y.S.2d 195, 198 (1988); *Parke-Bernet Galleries, Inc. v. Franklyn*, 26 N.Y.2d 13, 17, 308 N.Y.S.2d 337, 340 (1970). Although a single visit to New York may be sufficient to confer jurisdiction, courts consider the "totality of the circumstances" to determine whether the requisite minimum contacts have provided fair warning to Defendants of the possibility of being subject to the courts of New York. *SAS Group, Inc. v. Worldwide Inventions, Inc.*, 245 F. Supp. 2d 543, 548 (S.D.N.Y. 2003).[4]

As shown below, New York courts have frequently exercised jurisdiction in cases where a defendant's *only* contact with New York was a meeting or two in the state, or where a defendant's *only* contact with New York was by phone or mail. Defendants' continued contacts with New York for purposes of reaching an agreement, refining that agreement, carrying out that agreement, and getting paid (more than 25% of its annual revenue) are more than enough to subject them to jurisdiction.

      1.    Jurisdiction May Be Founded Solely on Meetings in New York

Based solely on visits to New York, the First Department found proper New York jurisdiction over defendants in *Ins. Co. of State of Pennsylvania v. CIGNA Property and Cas. Ins. Co.*, 162 A.D.2d 390, 557 N.Y.S.2d 43 (1st Dep't 1990). There, an insurance adjuster was

---

[3]    Personal jurisdiction in a diversity case is determined by the law of the state in which the district court sits. *SAS Group, Inc. v. Worldwide Inventions, Inc.*, 245 F. Supp. 2d 543, 547 (S.D.N.Y. 2003) *citing Kernan v. Kurz-Hastings, Inc.*, 175 F.3d 236, 240 (2d Cir. 1999).
[4]    Given that courts consider the "totality of the circumstances," Defendants' reliance on cases focused solely on contract formation is misplaced. *See* Def. Mem. pp. 8-10.

accused of negligence and breach of fiduciary duty in the adjustment and settlement of plaintiff's claim. The court held that three trips to New York by the insurance adjuster's employee to discuss the loss at issue was sufficient to confer jurisdiction. Similar fact patterns have produced similar results. *See, Firegreen Ltd. v. Claxton*, 160 A.D.2d 409, 553 N.Y.S.2d 765 (1st Dep't 1990) (single two-hour meeting in New York where agreement was either reached or clarified sufficient to confer jurisdiction under CPLR § 302(a)(1)); *George Reiner and Co., Inc. v. Schwartz*, 41 N.Y.2d 648, 394 N.Y.S.2d 844 (1977) (where plaintiff requested defendant come to New York, and at single New York meeting agreement was reached for services to be performed outside New York, jurisdiction existed under CPLR § 302(a)(1)).

As Plaintiff has admitted, Defendants traveled to New York to meet with Plaintiff and his wife. (Def. Mem. p. 9.) But while Defendants attempt to dismiss these meetings in New York as "tangential visits" that do not support jurisdiction, they present no evidence whatsoever as to the purpose of those visits, the topics discussed, or why they might be considered "tangential." (Def. Mem. pp. 9-10.) In fact, these visits were integral to reaching an understanding of the work to be performed and on specific design choices. (Siegal Aff. ¶¶ 2-4.)[5] The law is clear that "contract negotiations in New York will satisfy § 302(a)(1) if the discussions 'substantially advanced' or were 'essential to' the formation of the contract or advanced the business relationship to a more solid level." *Sas Group*, 245 F. Supp. 2d at 549 (internal citations omitted). Moreover, "it does not matter whether the negotiations are preliminary, whether the contract is executed in New York, or whether performance is contemplated for New York." *Id.* Regardless of whether a formal contract was negotiated during these New York visits (and

---

[5] Defendants' claim that "none of our New York visits involved contract negotiation or execution" is disingenuous in the extreme, as no formal contract was ever executed. (White Decl. ¶ 7.) As set forth in the Siegal affidavits, matters of substance were discussed at these meetings, which led to the advancement of the parties' business relationship and to the execution of actual work by Defendants. (G. Siegal Aff. ¶ 2-4.)

6

Defendants clearly felt that *some* arrangement existed between the parties, given the massive bills submitted), the discussions clearly advanced the business relationship to a more solid level. Without these discussions, Defendants would not have been able to proceed with the design or installation of the lighting system for the Bahamas house.

Based solely on Defendants' meetings in New York, jurisdiction is appropriate under CPLR § 302(a)(1).

### 2. Jurisdiction May Be Founded Solely on Communications With New York

Applying the principles clearly articulated in *Parke-Bernet Galleries* and *Kreutter*, New York courts have also found jurisdiction based solely on phone calls and letters into New York. For example, in *Catauro v. Goldome Bank for Savings*, 189 A.D.2d 747, 592 N.Y.S.2d 422 (2d Dep't 1993), an individual defendant was subject to New York jurisdiction based solely on phone calls and letters mailed to a New York bank in an attempt to (wrongfully) close a checking account. *See also Camel Investments Ltd. v. Transocean Capital*, 195 A.D.2d 533, 600 N.Y.S.2d 471 (2d Dep't 1993) (New York jurisdiction appropriate where defendants' only contacts with New York were through phone, faxes, wire transfers, and acts of agents). Voluminous and substantive paper correspondence was sent to New York by Defendants, and a huge number of phone calls were made into and out of New York with respect to the matters at issue. Based on this correspondence and these phone calls, vital agreements were reached and decisions made with respect to the work at the Bahamas house. (Siegal Aff. ¶¶ 5-10.) On this ground alone, jurisdiction is appropriate under CPLR § 302(a)(1).

7

### 3. Revenues Derived From New York Are A Significant Factor

While no reported decision appears to hinge solely on where payment is directed, place of payment "remains a factor, a significant contact, to be considered in determining whether to retain jurisdiction." *Snyder v. Madera Broadcasting, Inc.* 872 F. Supp. 1191, 1195 (E.D.N.Y. 1995) (internal quotations omitted). Here, every request for payment was sent to New York, and every payment made to Defendants was made from New York. (Siegal Aff. ¶¶ 12-13.)

In construing a related jurisdictional statute, CPLR 302(a)(3)(i), court have found that New York-derived revenues representing extremely low percentages of overall revenue were the "substantial revenue" required to confer jurisdiction. *See Reynolds v. Aircraft Leasing, Inc.*, 2002 WL 31748824 (N.Y. Sup. Queens Co. 2002) (9% of overall revenues derived from New York); *Allen v. Canadian General Electric Co. Ltd.*, 65 A.D.2d 39, 410 N.Y.S.2d 707 (3d Dep't 1978) (even 1% of revenues derived from New York could be "substantial" given large absolute size of revenues). In the most closely analogous case located, New York case of $259,935.70 over seven years, representing 7% of overall revenue was held to satisfy the "substantial revenues" requirement of CPLR § 302(a)(3)(i). *Nichols v. Surgitool, Inc.*, 419 F. Supp. 58 (W.D.N.Y. 1976). Here, approximately 25% of Defendants' revenue over three years – including a peak of 37% in 2006 – was derived from New York. (Niehaus Aff. ¶ 5.) At the very least, deriving 25% of their revenue from New York satisfies "traditional notions of fair play and substantial justice," by giving Defendants more than sufficient warning that they might be subject to the courts of New York.

        4.        <u>The Totality of the Circumstances Favor Jurisdiction</u>

The facts of *Rung v. U.S.F & G.*, 139 A.D.2d 914, 527 N.Y.S.2d 903 (4th Dep't 1988) closely parallel those of the matter at hand – although the defendant in *Rung* did not even visit New York – and clearly illustrate that jurisdiction is appropriate in this case. Plaintiffs in *Rung* were New York residents who owned a residence in Canada. Defendant was a Canadian insurance agency. The court found that the Canadian insurance agency had transacted business in New York by "regularly corresponding, by mail or telephone with Kary, plaintiffs' insurance agent in New York; by delivering the insurance policy to Kary in New York; by sending invoices to Kary, seeking plaintiffs' premium payments; and by collecting those premiums from Kary." *Id.* 139 A.D.2d at 915, 527 N.Y.S.2d at 904.

Here, Defendants regularly corresponded by mail, e-mail and telephone with Plaintiff in New York, delivered plans for the lighting system to Plaintiff in New York, sent invoices to Plaintiff in New York seeking payment, and collected those payments from Plaintiff, where those New York payments represented between 15% and 37% of their annual revenues. (Siegal Aff. ¶¶ 5-13; Niehaus Aff. ¶ 5.) In addition, of course, Defendants actually traveled to New York in furtherance of their business. (Siegal Aff. ¶¶ 2-4.) With such extensive contacts with New York over a three-year period, and such a significant portion of their revenues being derived from New York, Defendants cannot now claim to be surprised that they might be subject to New York jurisdiction.

     5.    Plaintiff's Causes of Action Arise
             Out of the Business Transacted in New York

Finally, there can be no doubt in Defendants' mind as to what business transaction this lawsuit arises from: the parties' agreement that Defendants design and oversee installation of a lighting system in Plaintiff's Bahamas home. The sole question is whether Defendants' New York contacts are sufficient to subject them to the specific jurisdiction of the New York courts. So rather than claiming that Plaintiff has the wrong transaction, Defendants argue that Plaintiff's claims must arise directly from Defendants' trips to New York. (Def. Mem. p. 11.) As noted above, however, jurisdiction under CPLR 302(a)(1) is determined by the "totality of the circumstances," and no reported case law supports carving out one aspect of a defendant's New York contacts and determining jurisdiction based solely on that aspect. All of Defendants' contacts with New York, including visits, calls, faxes, correspondence, and payment, relate to the transaction and causes of action at issue, and the totality of the circumstances show that it is not unfair to subject Defendants to New York jurisdiction.[6]

## II.   DEFENDANTS HAVE NOT SHOW THAT THE MATTER SHOULD BE TRANSFERRED TO COLORADO

In seeking a transfer, the moving party has the "heavy" burden to establish "by a clear and convincing showing" that a transfer is appropriate and that the motion should be granted. *Schnabel v. Ramsey Quantitative Systems, Inc.*, 322 F. Supp. 2d 505, 518 (S.D.N.Y. 2004); *Matera v. Native Eyewear, Inc.* 355 F. Supp. 2d 680, 687 (E.D.N.Y. 2005). The moving party

---

[6] While Plaintiff believes that he has more than carried his burden of making a *prima facie* showing of jurisdiction and that Defendants have failed to rebut that showing, should the Court find the jurisdictional question to be close, Plaintiff respectfully requests that a brief period of jurisdictional discovery be permitted.

    In addition, Plaintiff has no current basis to allege that Defendants are subject to jurisdiction pursuant to CPLR § 301 under a "doing business" general jurisdiction theory. However, particularly in light of Defendants' admission that at least 25% of their revenues were derived from New York over the past three years, should the Court determine that jurisdiction does not exist under CPLR § 302(a)(1), Plaintiff would welcome jurisdictional discovery on this jurisdiction basis as well.

must supply an affidavit that contains detailed factual statements explaining why the motion should be granted, including information on the potential principal witnesses and a general statement as to their testimony. *Orb Factory, Ltd. v. Design Science Toys, Ltd.*, 6 F. Supp. 2d 203, 208 (S.D.N.Y. 1998). "Vague generalizations and failure to clearly specify the key witnesses to be called, along with a statement concerning the nature of their testimony, are insufficient basis upon which to grant a change of venue under § 1404(a)." *Orb Factory*, 6 F. Supp. 2d at 208-09. There is no rigid formula for balancing these factors, and no single factor is determinative. However, a court must give "due deference to the plaintiff's choice of forum which should not be disturbed unless the balance of convenience and justice weigh heavily in favor of defendant's forum . . . ." *Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 561 (S.D.N.Y. 2000).

In the case at bar, Defendants have submitted only conclusory assertions that design work was performed in Colorado, and that WLD employees who worked on the project reside in Colorado. (White Decl. ¶¶ 7-8.) These vague generalizations are insufficient as a matter of law to support transfer of venue. Based on the facts Defendants *have* made available, the motion fails on the merits as well.

    A. <u>Plaintiff's Proper Choice of Forum is Entitled to Significant Weight</u>

As noted above, a Plaintiff's choice of forum is generally entitled to deference absent a showing that the balance weighs "heavily" in favor of defendant's forum. *See Citigroup, supra; see also, Aerotel, Ltd. v. Sprint Corp.*, 100 F. Supp. 2d 189, 197 (S.D.N.Y.). Defendants first attack this presumption by arguing that because Plaintiff owns a home in Colorado, his choice of forum is entitled to little weight. (Def. Mem. p. 14.) Defendants offer no law or logic to support this proposition, and it must be dismissed.

11

Defendants then argue that this is really a declaratory judgment action, and cites inapposite Sixth Circuit law for the proposition that a declaratory judgment action should not be used to win a race to the courthouse. (Def. Mem. p. 15). This argument suffers from both legal and factual defects.

First, the case cited, *AmSouth Bank v. Dale*, 386 F.3d 763 (6th Cir. 2004) dealt with the propriety of permitting a case to proceed under the federal Declaratory Judgment Act, *not* with transfer of a case to another district. The impropriety of using *AmSouth* to undermine long-standing rules regarding deference to a plaintiff's choice of forum is underscored by language quoted by Defendants: "where a putative defendant files a declaratory judgment action *whose only purpose* is to defeat liability in a subsequent coercive suit, no real value is served by the declaratory judgment except to guarantee to the declaratory plaintiff her choice of forum . . ." Def. Mem. p. 15, *quoting AmSouth*, 386 F.3d at 788 (emphasis added).

Here, of course, Plaintiffs have alleged in detail numerous affirmative claims against Defendants, and Defendants have not challenged that Plaintiffs have stated cognizable causes of action against them.[7] This is not an instance where the only purpose of the action is to secure declaratory relief that Defendants are entitled to no further payment from Plaintiff – Defendants are being sued for significant damages. Plaintiff's choice of forum remains entitled to significant weight.

      B.    <u>Document Location is Does Not Weigh in Favor of Transfer</u>

In an age of electronic documents, easy copying, rapid scanning, and overnight shipping, the physical location of relevant documents is of minimal importance. *See Schnabel*, 322 F. Supp. 2d at 518 (location of records not a compelling consideration when records are easily

---

[7] Indeed, Defendants appear to admit that their design was defective. Quoting page 14 of the Memorandum of Law, "After the design problems became apparent, defendants tried to fix them but despite their assurances in December of 2006, that all was well, the defects remained."

12

portable; in "today's era of photocopying, fax machines and Federal Express, location of documents factor is neutral") (internal quotations and citations omitted).  In this case, the location of relevant documents is even less material, as Defendants claim to have only electronic files (transmittable anywhere in the world with a few keystrokes), and 1,000 pages – less than half a box – of hard copy documents.  Indeed, Plaintiff possesses a similar amount of hard copy documents relating to this matter.  (Siegal Aff. ¶ 10.)  Therefore, the factor of document location does not weigh in favor of transfer.

      C.  <u>Witness and Party Inconvenience Does Not Weigh in Favor of Transfer</u>

  Defendants focus on the fact that White Lighting employees are located in Colorado to argue that witness convenience dictates that the matter be transferred.  (Def. Mem. p. 13.) Defendants gloss over the fact that there are only five White Lighting employees including Mr. White (White Decl. ¶ 3), and fail to note whether all five even participated in the Siegals' project.  As noted above, this type of cursory treatment is insufficient to make a proper showing of witness inconvenience.  *Orb Factory*, 6 F. Supp. 2d at 208-09; *Schnabel* 322 F. Supp. at 516-17.  Defendants also ignore the fact that at least Mr. and Mrs. Siegal, Tim Smith, an independent electrical consultant who has observed Defendants' activities first hand, and Barbara Ross and Lauder Bowdin, designers who participated in some of the New York phone calls with Mr. White, are all located in New York.  (Siegal Aff. ¶¶ 14-15.)  Defendants further fail to note that a variety of other potential witnesses are located in Pennsylvania, Florida or the Bahamas.  (Siegal Aff. ¶¶ 16-18.)

  Thus, neither Colorado nor New York is the clear center of gravity for witnesses.  Both parties will have to travel to depose witnesses in Pennsylvania, Florida or the Bahamas, and should such witnesses attend a trial it is undoubtedly easier and quicker to reach New York from

Florida than it is to reach Denver. Moreover, the depositions of White Lighting employees will take place in Colorado regardless of where the action is actually venued.

Defendants do not separately argue that party convenience dictates a transfer to Colorado, likely because each party will be equally inconvenienced by litigating in the others' forum.[8] *See Schnabel*, 322 F. Supp. 2d at 516 (where transfer would merely shift inconvenience from one party to the other, factor is neutral).

Party and witness inconvenience is therefore a push between the two locations.

> D.   The Locus of Operative Facts Does Not Weigh in Favor of Transfer

Defendants cursorily argue that Colorado is the locus of operative facts, based on the location of Defendants' witnesses, Defendants' files, and where design work was done. (Def. Mem. p. 13.) As noted above, these arguments ignore the fact that Plaintiff will produce witnesses and documents not located in Colorado to support his claims. Simply because the designs were physically drawn in Colorado does not mean that all facts and events relevant to the designs (such as Plaintiff's requests, suggestions, input, approval, discussion of special needs, implementation of the designs, etc.) occurred in Colorado.

Moreover, as Defendants themselves acknowledge, a key matter to be explored in this case is the "alleged supervisory work performed by defendants." (Def. Mem. p. 13.) Defendants further acknowledge that in connection with the project they visited the Bahamas site "*at least 70 times, usually for three to seven days at a time*." (White Decl. ¶ 3 (emphasis added).) Thus, facts regarding Defendants' activities on site in the Bahamas – their implementation of their designs and their supervision or lack thereof – will comprise a significant portion of the facts to

---

[8]   Plaintiff's home in Vail does not in any way mitigate inconvenience. From Vail to the Denver courthouse is a drive of approximately 100 miles and two hours, meaning that Mr. Siegal would have to fly to Denver and rent a hotel room in Denver, just as Mr. White would have to fly to New York and get a hotel room in New York. (Siegal Aff. ¶ 20.)

be discovered and ultimately to be presented at trial. It is impossible to say at this stage of the litigation, particularly without detailed affidavits from Defendants, that the locus of facts lies in Colorado.

        E.       <u>Availability of Process Does Not Weigh in Favor of Transfer</u>

Defendants argue that availability of process favors Colorado, because *if* any of their employees leave White Lighting, process will have to be served out of Colorado. (Def. Mem. pp. 13-14.) This presents no discovery obstacle whatsoever, as Plaintiff may issue deposition subpoenas nationwide, and is happy to do so. With respect to appearing as trial witnesses, the unavailability of process over witnesses does not compel transfer when the practical alternative of offering videotaped or deposition testimony of a given witness exists. *Citigroup*, 97 F. Supp. 2d at 561. Moreover, there is no guarantee (as Defendants assume) that former White Lighting employees would reside within 100 miles of the Denver courthouse, rendering even Defendants' hypothetical situation moot. Availability of process therefore does not weigh in favor of transfer.

        F.       <u>The Relative Means of the Parties Do Not Weigh in Favor of Transfer</u>

As with the other factors, a party arguing for transfer on the basis of the relative means of the parties "must offer documentation showing that granting or denying the transfer would be unduly burdensome." *Boehner v. Heise*, 410 F. Supp.2d 228 (S.D.N.Y. 2006) (internal quotations omitted). Defendants have presented no such documentation on the undue burden of litigating in New York. Moreover, in light of the fact that New York counsel has already been engaged, and discovery of Defendants' employees will take place in Colorado regardless of the venue, it is not until trial that New York would pose any more of burden on Defendants than a Colorado venue. Because Defendants have failed to produce evidence as to why litigating in

15

New York would impose an undue burden on them, and because any additional expense of litigating in New York would be limited, this factor also does not weigh in favor of transfer.

## CONCLUSION

Because Defendants have failed to rebut Mr. Siegal's *prima facie* showing of jurisdiction, because Defendants' contacts with New York in connection with the transaction at issue are extensive, because jurisdiction over Defendants would not offend traditional notions of fair play and substantial justice, and because Defendants have not carried their heavy burden of showing that Plaintiff's choice of forum should be disturbed, the Court should deny Defendants' motion to dismiss or transfer in its entirety.

Dated: New York, New York
       July 30, 2007

                                          NIEHAUS LLP

                                          s/ Paul R. Niehaus
                                          Paul R. Niehaus (PN-3994)
                                          NIEHAUS LLP
                                          230 Park Avenue, 10th Floor
                                          New York, New York  10169
                                          (212) 551-1445 (tel)
                                          (212) 624-0223 (fax)
                                          *Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I, Paul R. Niehaus, an attorney in good standing of the Bar of this Court and of the State of New York, and counsel for Plaintiff herein, hereby certify that I have this day filed the foregoing Memorandum of Law, and the accompanying Affidavit of Gail Siegal and Affirmation of Paul R. Niehaus by the Electronic Filing System, which will automatically serve a copy by ECF upon Eric Wertheim of Val Mandel, P.C., counsel for Defendants.

This 30th day of July, 2007.

                                              s/ Paul R. Niehaus
                                              Paul R. Niehaus