Eric Wertheim (EW-3049)
VAL MANDEL PC
80 Wall St., Suite 1115
New York, New York 10005
(212) 668-1700
Attorneys for White Lighting
Design Inc. and Kevin D. White

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
RICHARD SIEGAL,

    -against-  :  07 CV. 5991 (JSR)

: **FIRST AMENDED ANSWER,**
: **AFFIRMATIVE**
WHITE LIGHTING DESIGN, INC.  :  **DEFENSES, AND**
and KEVIN D. WHITE,  :  **COUNTERCLAIMS**

      Defendants.
------------------------------------X

WHITE LIGHTING DESIGN, INC. and KEVIN
D. WHITE,

    -against-

RICHARD SIEGAL, GAIL SIEGAL and
BISTATE OIL MANAGEMENT CORP.
------------------------------------X

  Defendants, White Lighting Design, Inc. ("WLD") and Kevin D. White, by and through their undersigned attorneys, for their First Amended Answer, Affirmative Defenses and Counterclaims herein, allege as follows:

  1. Deny the allegation of Paragraph 1 of the Complaint.

2. Admit, upon information and belief, that Plaintiff is a citizen of the United States but deny knowledge or information sufficient to form a belief as to Whether New York is Plaintiff's sole or primary legal residence, or whether Plaintiff has a place of business in New York.

3. Deny that Kevin D. White has a "principal place of business" but otherwise admit the allegation of Paragraph 3 of the Complaint.

4. Admit the allegation of Paragraph 4 of the Complaint.

5. Admit that Gail and Richard Siegal asked WLD to design the lighting on a home being built in the Bahamas, and that WLD performed lighting design work for the Siegals' homes in Vail and Long Island but deny the remainder of the allegations of Paragraph 5 of the Complaint.

6. Deny knowledge or information sufficient to form a belief as to Plaintiff's state of mind and deny that Kevin D. White was hired to perform any work in connection with the Bahamas house.

7. Admit that Mrs. Siegal had a vision problem and made design requests with that problem in mind, and admit that WLD was hired to design lighting for the Bahamas home, but otherwise deny the allegations of Paragraph 7 of the Complaint.

8. Admit that WLD recommended the Lutron system, among other options, but otherwise deny the allegations of Paragraph 8 of the Complaint.

9. Admit that Mrs. Siegal did initially question the need for the Lutron system but deny that defendants "pushed" her to use the system.

10. Deny the allegations of Paragraph 10.

11. Deny the allegations of Paragraph 11 of the Complaint but admit that WLD was hired to design the lighting for the Bahamas' home and to design and program the Lutron system.

12. Admit the allegations of Paragraph 12 of the Complaint but deny receiving any specific information regarding Mrs. Siegal's eye condition.

13. Admit that WLD personnel attended meetings in the Bahamas, at plaintiff's direction, deny knowledge or information sufficient to form a belief as to the truth of Plaintiff's characterization of the accommodations as "luxury" accommodations, and otherwise deny the allegations of Paragraph 13 of the Complaint.

14. Deny the allegations of Paragraph 14 of the Complaint.

15. Deny the allegations of Paragraph 15 of the Complaint.

16. Deny the allegations of Paragraph 16 of the Complaint.

17. Deny the allegations of Paragraph 17 of the Complaint.

18. Deny the allegations of Paragraph 18 of the Complaint.

19. Deny the allegations of Paragraph 19 of the Complaint.

20. Deny knowledge or information sufficient to form a belief as to the truth of the allegations about what happened when the Lutron system was turned on and otherwise deny the allegations of Paragraph 20 of the Complaint.

21. Deny the allegations of Paragraph 21 of the Complaint.

22. Deny the allegations of Paragraph 22 of the Complaint.

23. Deny the allegations of Paragraph 23 of the Complaint.

24. Admit that there were problems due to faulty wiring but otherwise deny the allegations of Paragraph 24 of the Complaint.

25. Deny the allegations of Paragraph 25 of the Complaint.

26. Deny the allegations of Paragraph 26 of the Complaint.

27. Deny the allegations of Paragraph 27 of the Complaint.

28. Deny the allegations of Paragraph 28 of the Complaint.

29. Deny the allegations of Paragraph 29 of the Complaint

30. Admit that electrical work was not complete but otherwise deny the allegations of Paragraph 30 of the Complaint.

31. Admit that WLD hired electricians upon the clients' request but otherwise deny the allegations of Paragraph 31 of the Complaint.

32. Deny the allegations of Paragraph 32 of the Complaint.

33. Deny the allegations of Paragraph 33 of the Complaint.

34. Deny the allegations of Paragraph 34 of the Complaint.

35. Deny the allegations of Paragraph 35 of the Complaint.

36. Deny the allegations of Paragraph 36 of the Complaint.

37. Deny the allegations of Paragraph 37 of the Complaint.

38. Admit that WLD traveled to the Bahamas as part of its design responsibilities but otherwise deny the allegations of Paragraph 38 of the Complaint.

39. Defendants repeat and reallege their responses to Paragraphs 1 through 38 as if fully set forth herein.

40. Deny the allegations of Paragraph 40 of the Complaint.

41. Admit that WLD agreed to perform its duties in a workmanlike manner but otherwise deny the allegations of Paragraph 41 of the Complaint.

42. Admit that WLD was to be compensated for its design work but otherwise deny the allegations of Paragraph 42 of the Complaint.

43. Deny the allegations of Paragraph 43 of the Complaint.

44. Deny the allegations of Paragraph 44 of the Complaint.

45. Deny the allegations of Paragraph 45 of the Complaint.

46. Deny the allegations of Paragraph 46 of the Complaint.

47. Deny the allegations of Paragraph 47 of the Complaint.

48. Deny the allegations of Paragraph 48 of the Complaint.

49. Deny knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 49 of the Complaint.

50. Deny knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 50 of the Complaint.

51. Deny the allegations of Paragraph 51 of the Complaint.

52. Deny the allegations of Paragraph 52 of the Complaint.

53. Deny the allegations of Paragraph 53 of the Complaint.

54. Deny the allegations of Paragraph 54 of the Complaint.

55. Defendants repeat and reallege their responses to Paragraphs 1 through 54 as if fully set forth herein.

56. Deny the allegations of Paragraph 55 of the Complaint.

57. Defendants admit the allegations of Paragraph 57 of the Complaint to the extent of the responsibilities undertaken by WLD but otherwise deny the allegations of Paragraph 57 of the Complaint.

58. Deny the allegations of Paragraph 58 of the Complaint.

59. Defendants repeat and reallege their responses to Paragraphs 1 through 58 of their answers to the allegations of the Complaint as if fully set forth herein.

60. Deny the allegations of Paragraph 60 of the Complaint.

61. Deny the allegations of Paragraph 61 of the Complaint.

62. Deny the allegations of Paragraph 62 of the Complaint.

63. Deny the allegations of Paragraph 63 of the Complaint.

64. Deny the allegations of Paragraph 64 of the Complaint.

65. Defendants repeat and reallege their responses to Paragraphs 1 through 64 of their answers to the allegations of the Complaint as if fully set forth herein.

66. Admit the allegations of Paragraph 66 of the Complaint.

67. Deny the allegations of Paragraph 67 of the Complaint.

68. Admit the allegations of Paragraph 68 of the Complaint.

69. Deny the allegations of Paragraph 69 of the Complaint.

70. Deny the allegations of Paragraph 70 of the Complaint.

71. Defendants repeat and reallege their responses to Paragraphs 1 through 70 of their answers to the allegations of the Complaint as if fully set forth herein.

72. Deny the allegations of Paragraph 72 of the Complaint.

73. Deny the allegations of Paragraph 73 of the Complaint.

74. Deny the allegations of Paragraph 74 of the Complaint.

75. Deny the allegations of Paragraph 75 of the Complaint.

76. Deny the allegations of Paragraph 76 of the Complaint.

77. Deny the allegations of Paragraph 77 of the Complaint.

78. Defendants repeat and reallege their responses to Paragraphs 1 through 77 of their answers to the allegations of the Complaint as if fully set forth herein.

79. Admit the allegations of Paragraph 79 of the Complaint.

80. Deny the allegations of Paragraph 80 of the Complaint.

81. Paragraph 81 asserts a legal conclusion.

82. Paragraph 82 asserts a legal conclusion.

83. Paragraph 83 does not assert an allegation.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

1. The Court lacks Personal Jurisdiction over Defendants under the Civil Practice Law and Rules, and Defendants do not have sufficient minimum contacts with this forum to justify the exercise of personal jurisdiction over them.

### SECOND AFFIRMATIVE DEFENSE

2. Plaintiff's Second, Fourth, Fifth and Sixth Causes of Action Fail to state claims upon which Relief may be granted in that all of Plaintiff's claims, if any, arise solely under contract law. The facts alleged by Plaintiff do not provide grounds for a declaratory judgment.

### THIRD AFFIRMATIVE DEFENSE
### (In the Alternative)

3. Plaintiff Lacks Standing to Bring this Action. Upon information and belief, Bistate Oil Mgt. Corp. ("Bistate") is the proper plaintiff because plaintiff Richard Siegal hired WLD in his capacity as president and/or principal of Bistate.

## COUNTERCLAIMS

### JURISDICTION

4. Subject matter Jurisdiction and Venue are proper pursuant to 28 U.S.C. § 1332 and 1391.

### FACTS

5. In the summer of 2003, Richard and Gail Siegal and/or Bistate (the "Counterclaim Defendants") retained White Lighting Design Inc. ("WLD") to design the lighting for a home being built in the Bahamas. The Counterclaim Defendants agreed to compensate WLD for its design work and expenses. Richard Siegal instructed WLD to submit its bills to Bistate and, until January 2007, Bistate paid WLD's bills. Either Bi-state contracted directly with WLD or WLD was an intended third-party beneficiary of an agreement between Richard Siegal and Bistate whereby Bistate agreed to accept and pay WLD's bills.

6. WLD has performed all of its obligations pursuant to the parties' agreement.

7. The Counterclaim Defendants have failed to pay WLD for invoices dated January 3, 2007, January 30, 2007, February 27, 2007, and May 8, 2007, totaling $251,833.73, although the Counterclaim Defendants did not dispute the invoices at the time they received the invoices or within a reasonable time thereafter.

8. WLD was one of many contractors who worked on the Bahamas home. There were a number of serious problems with the project, including the installation of improper wiring by an electrician.

9. Upon information and belief, to avoid paying the money owed to WLD, the Counterclaim Defendants have, knowingly and with ill-will, falsely accused WLD and Kevin D. White of (a) being responsible for the electrician's defective work, (b) professional incompetence in the design work for the lighting in the Bahamas house, and (c) offering advice, performing work and submitting bills in order to maximize WLD's fees rather in a good faith effort to perform and bill for the services contracted for by the Counterclaim Defendants.

10. Upon information and belief, the Siegals have published these false accusations to Rich Black, Andy Wakefield and Greg White of Lutron, Inc., Barbara Ross and Lauder Bowden of BHR Design, David Mondragon and Matt Sanchez of Acoustic Visions, Johnny Ing and others with Carpenter Electric, Neil Gary and Ed Richmond of Window Modes, Rick Langille of Electronic Services and Consulting, Carl Lessard, John Hufnagel, Fred Zrinscak, Marty Miller of Lessard and Bauman, Jim Morter, Pavan Krueger and Matt Lee of Morter Architects, and/or Andrew Stirling of Plan It Bahamas.

11. On March 6, 2007, Richard Siegal, in writing, told Richard Black, Richard Angle, Timothy Smith, Carl Lessard and Darin Ginns that the Counterclaim Defendants (a) sent unskilled people to perform work on the Bahamas home, (b) falsely reported that the Lutron system was working perfectly (c) failed to spend an adequate amount of time on the project, which resulted in a failed system and the need to spend large sums for repairs (d) failed to perform WLD's design and specification work properly, and (e) were incompetent.

12. The Siegals' false accusations have damaged the Counterclaim Plaintiffs.

### FIRST COUNTERCLAIM

13. WLD repeats and realleges Paragraphs 1 to 12 as if fully set forth herein.

14. In 2003, the Counterclaim Defendants entered into an agreement with WLD pursuant to which WLD would perform lighting design services in connection with a home being built in the Bahamas. The Counterclaim Defendants agreed to pay for such services as well as for WLD's expenses.

15. WLD regularly sent invoices to Bistate, at Richard Siegal's direction, for WLD's fees and expenses. The Counterclaim Defendants have failed to pay $251,833.73 to WLD despite due demand for same in invoices dated January 3, 2007, January 30, 2007, February 27, 2007, and May 8, 2007.

11

16. WLD has been damaged in an amount to be determined by the Court but not less than $251,833.73, plus interest.

**SECOND COUNTERCLAIM**

17. WLD repeats and realleges Paragraphs 1 to 16 as if fully set forth herein.

18. An account was stated between WLD and Counterclaim Defendants in the amount of $251,833.73 by virtue of invoices dated January 3, 2007, January 30, 2007, February 27, 2007, and May 8, 2007.

**THIRD COUNTERCLAIM**

19. Plaintiff repeats and realleges Paragraphs 1 to 18 as if fully set forth herein.

20. The statements described in Paragraph 6 of the Counterclaims constituted defamation per se.

21. WLD and Kevin d. White has been damaged by those statements.

WHEREFORE, Defendants and Counterclaim Plaintiffs demand judgment as follows:

a) Dismissing the Complaint with prejudice and entering Judgment in favor of defendants.

b) On the First Counterclaim, awarding judgment to WLD against the Counterclaim Defendants for compensatory damages in an amount to be determined by the Court; for attorneys' fees and

costs of the suit; and for such other and further relief as the Court may deem just and proper.

c) On the Second Counterclaim, awarding judgment to WLD against the Counterclaim Defendants for compensatory damages in an amount to be determined by the Court; for attorneys' fees and costs of the suit; and for such other and further relief as the Court may deem just and proper.

d) On the Third Counterclaim, awarding WLD and Kevin D. White judgment against the Siegals for compensatory damages; punitive damages; attorneys' fees and costs of the suit; and for such other and further relief as the Court may deem just and proper.

Dated:   New York, New York
         October 8, 2007

                VAL MANDEL, P.C.
                *Attorneys for White Lighting Design Inc. and Kevin D. White*
                80 Wall Street, Suite 1115
                New York, New York 10005
                (212) 668-1700

By: _____
     Eric Wertheim (EW-3049)